1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

13

14

| | |
|---|---|
| MARC LILLY, NOT IN HIS INDIVIDUAL CAPACITY BUT AS THE REPRESENTATIVE FOR THE FORMER SHAREHOLDERS OF VIEOSOFT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ENVOY, LLC; EMDEON, INC.; EMDEON BUSINESS SERVICES, LLC; TOM GROOM (named as an indispensable party),<br><br>Defendants. | Case No. C15-0742 RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

15

16

17

18

19

20

21

22

23

24

25

## I.      INTRODUCTION

THIS MATTER comes before the Court on Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Dkt. #26.  Specifically, Defendants argue that: 1) Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law; 2) Plaintiff fails to state a claim for breach of fiduciary duty; 3) Plaintiff fails to state any express breach of contract claim; and 4) Plaintiff fails to state any claims against Emdeon and EBS.  *Id.*  Plaintiff opposes the motion, asserting that it has sufficiently alleged each of his claims against all Defendants. Dkt. #31 (*filed under seal*).  For the reasons set forth below, the Court agrees in part with Plaintiff and GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss.

ORDER – 1

## II.     BACKGROUND

Plaintiff alleges the following factual background:

### A.  The Stock Purchase Agreement

Defendant Emdeon provides revenue and payment cycle management and clinical information exchange solutions for healthcare system payors and providers.  Dkt. #1 at ¶ 14. Vieosoft, a Washington corporation, was formed in 2010 and focused on developing cloud-based services, information, and tools to help payers, pharmacies, vendors of electronic health records, doctors, and patients electronically manage prescriptions.  *Id*. at ¶ ¶ 13 and 15.

Beginning in 2012, Emdeon identified that Vieosoft could add significant additional product value to Emdeon in terms of electronic prescription technologies.  *Id*. at ¶ 17.  As a result, on February 12, 2014, Emdeon (through a special purpose entity called "Envoy, LLC") purchased all Vieosoft stock from Vieosoft's shareholders (the "Shareholders") pursuant to the "Stock Purchase Agreement."  *Id*. at ¶ 20 and Dkt. #1-1.  Under the Stock Purchase Agreement, in addition to receiving all stock of Vieosoft, Emdeon obtained the promise of four key Shareholders to work with Emdeon to help implement an agreed-upon development plan for the electronic prescription software (the "Contributing Shareholders").  Dkt. #1 at ¶ ¶ 20-21.  The four Contributing Shareholders were required to accept five year non-compete provisions.  *Id*. at ¶ 21 and Dkt. #1-1 at § 9.4.

The Stock Purchase Agreement contains a detailed "Development Plan" to bring the software products on-line within Emdeon.  Dkt. #1 at ¶ 20 and Dkt. #1-2.  The Development Plan is attached as Annex D to the Stock Purchase Agreement and is expressly incorporated by reference.  Dkt. #1 at ¶ 20; Dkt. #1-1 at § § 1.5 and 1.6; and Dkt. #1-2.  Under the Development

ORDER – 2

Plan, the Contributing Shareholders were to help develop certain "Milestone Objectives," which were to be completed on or before December 31, 2014.  Dkt. #1 at ¶ 30; Dkt. #1-1 at § 1.5; and Dkt. 1-2 at 2.

Emdeon paid upfront consideration to the Shareholders in the amount of $2.75 million. Dkt. 1 at ¶ 21 and Dkt. #1-1 at § 1.2.  Emdeon also promised the Shareholders additional consideration contingent upon realization of the Development Plan and resulting "Eligible Revenue."  Dkt. # 1 at ¶ ¶ 21 and 37-38 and Dkt. #1-1 at § § 1.7-1.8.

**B. Emdeon's Express Obligations Under The Stock Purchase Agreement**

The Stock Purchase Agreement, including the Development Plan, imposes express contractual obligations on Emdeon.  For example, the Development Plan required Emdeon to provide certain resources, including developers, software architects, and quality assurance managers (the "Development Team").[1]  Dkt. #1 at ¶ 33 and Dkt. 1-2.  Further, section 1.6 of the Stock Purchase Agreement provided that Emdeon was to "oversee[] the management structure and other personnel involved with the execution and continued performance of the Development Plan" and "implement[] modifications of the Development Plan."  Dkt. #1 at ¶ 34 and  Dkt. #1-1 at § 1.6.  Section 1.6 also gives Emdeon the freedom to operate its business and confirms that Emdeon makes no representations as to the generation of Eligible Revenue.

Together, the Milestone Objectives and Emdeon's existing Core ePrescribing products were to be combined into a "Solution," which would be marketed to existing and new Emdeon customers seeking an end-to-end (provider to payer) electronic pharmacy prescription solution.

---

[1]  Other confidential obligations have been omitted from this discussion as they are contained in documents filed under seal in this Court.  However, the Court has considered the entire, unredacted Complaint and its Exhibits on this motion.

ORDER – 3

Dkt. #1 at ¶ 35 and Dkt. #1-1 at § 1.5.  The Contributing Shareholders were obligated to "develop, customize, test and deliver to Emdeon the Solution as set forth herein and in the Development Plan."  Dkt. 1 at ¶ 36 and Dkt. #1-1 at § 1.5.  The Shareholders would then share in Eligible Revenue flowing from the Solution.[2]  Dkt. #1 at ¶¶ 37-38 and Dkt. #1-1 at § § 1.7(b) and (c).

### C. Emdeon Fails To Comply With The Development Plan And Frustrates/Prevents The Contributing Shareholders' Performance

Following execution of the Stock Purchase Agreement, the Contributing Shareholders recruited and built a talented Development Team, many of whom had previously helped the Contributing Shareholders complete similar projects.  Dkt. 1 at ¶¶ 32 and 40.  The Development Team immediately began working on the Milestone Objectives.[3]  Dkt. #1 at ¶ 43.

Shortly after executing the Stock Purchase Agreement, Emdeon announced that it was going to change its systems hosting platform, the platform upon which all of its operating software depends.  Dkt. #1 at ¶ 44.  Prior to execution of the Stock Purchase Agreement, Emdeon was using a traditional Microsoft Windows-based internal server hosting platform.  *Id*.  Shortly thereafter, Emdeon announced the decision to move all of its operations to a cloud-based hosting platform offered by Amazon Web Services.  *Id*.  Plaintiff alleges that this posed significant challenges for Emdeon overall, as well as for timely development of the Solution because any Solution would have to be built in a new hosting environment.  *Id*.  As a result, the Development Team was diverted from working on the Milestone Objectives; instead, the Development Team was forced to work on Emdeon's deliverables under the Stock Purchase Agreement.  (Dkt. #1 at ¶

---

[2]  Plaintiff alleges this amount to be up to $43 million.

[3]  This discussion omits some specific undertakings as those actions are contained in documents filed under seal in this Court.  However, as noted above, the Court has considered the entire, unredacted Complaint and its Exhibits on this motion.

ORDER – 4

47.   Plaintiff asserts that Emdeon's decision to switch hosting platforms (internal servers migrating to cloud) made the process of completing the Core ePrescribing products more time-consuming and difficult, because the products had to be re-coded to function in Emdeon's new cloud environment.   Dkt. 1 at ¶ 47.   Plaintiff alleges that this decision by Emdeon prevented the Contributing Shareholders from completing the Milestone Objectives by December 31, 2014.   *Id.* Further, when the Stock Purchase Agreement was executed, Emdeon was using IBM Initiate as its MPI tool. Dkt. #1 at ¶ 49.   However, in or around the second quarter of 2014, shortly after the Stock Purchase Agreement was executed, Emdeon decided to replace IBM Initiate with an alternative MPI created by Oracle, known as the Oracle Master Person Index.   *Id.*   The transition from IBM Initiate to Oracle Master Person Index also required substantial new work.   This development task was not anticipated in the Development Plan.   *Id.* and Dkt. #1-2.   This, Plaintiff alleges that in failing to adjust the Development Plan to reflect the fact of these fundamental changes to Emdeon's operations, Emdeon breached its express obligations under section 1.6 to administer the Development Plan and modify the Development Plan to reflect the changed circumstances caused by its own conduct.   Dkt. #1 at ¶ 76(d) and (e) and Dkt. #1-1 at § 1.6. Plaintiff further alleges that in making these decisions, Emdeon also breached the Development Plan.

### D.  Emdeon Terminates The Stock Purchase Agreement

On April 29, 2015, Emdeon issued a notice formally "terminating" the Stock Purchase Agreement, citing the Contributing Shareholders' alleged breach of the Stock Purchase Agreement by failing to timely complete the Milestone Objectives.   Dkt. #1 at ¶ 65.   Plaintiff alleges that because Emdeon is solely responsible for the failure to timely complete the Milestone

1   Objectives, Emdeon's termination of the Stock Purchase Agreement on this ground represents a

2   breach of the agreement by Emdeon.  Dkt. #1 at ¶ 76(h).  Plaintiff further alleges that as a result

3   of the termination, the Shareholders stand to lose the vast majority of the purchase price

4   bargained for in the Stock Purchase Agreement.  Dkt. #1 at ¶ 68.  Plaintiff asserts that Emdeon

5   continues to move forward with plans to develop, implement, and sell the Solution.  Dkt. #1 at ¶

6   67.

### III.   DISCUSSION

#### A.  Standard of Review Under 12(b)(6)

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, the court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Absent facial plausibility, a plaintiff's claims must be dismissed.  *Twombly*, 550 U.S. at 570.

#### B.  Applicable Law

The parties appear to agree that this matter is governed by Delaware law.  Accordingly, the Court applies such law to the instant motion.

ORDER – 6

### C.  Plaintiff's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants first argue that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law because Delaware courts narrowly construe this covenant and will not apply it to displace explicit contract terms or to insert terms that a party could have obtained through negotiation.  Dkt. #26 at 9.  Defendants primarily rely on *Winshall v. Viacom International, Inc.*, 76 A.3d 808 (Del. 2013) and *Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010) in support of its argument.  Plaintiff responds that *Winshall* actually supports his position, and that he has pled a valid claim.  Dkt. #31 at 13-19.  The Court finds that Plaintiff has adequately pled his claim at this time.

Delaware courts recognize that the "implied covenant of good faith and fair dealing involves a 'cautious enterprise,' inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated."  *Nemec*, 991 A.2d at 1125.  Indeed, the Supreme Court of Delaware has noted that "one generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement."  *Id.* at 1125-1126 (citation omitted).  Thus, Delaware courts will only imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected.  *Id.* at 1126.  The Supreme Court of Delaware has also noted that when conducting this analysis, the Court must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal.  *Id.*  "Parties have a right to enter into good and bad contracts, the law enforces both."  *Id.*

ORDER – 7

Here, Plaintiff has clearly pled that Defendants have acted unreasonably, thereby frustrating the fruits of the bargain that Plaintiff reasonably expected.  Dkt. #1 at ¶¶ 73-78.  While it is true, as Defendants argue, that the contract at issue provides Defendants with the freedom to run their business as desired, the resolution of Plaintiff's claim also requires an analysis of the parties' expectations of the contract they bargained.  *Nemec*, 991 A.2d at 1126.  That is a question that requires a more developed factual record and cannot be resolved at this stage.  As a result, the Court finds that, accepting Plaintiff's allegations as true for purposes of this motion, Plaintiff has sufficiently pled a claim for breach of the implied covenant of good faith and fair dealing based on frustration, and the claim will not be dismissed at this stage of the proceedings.

## D.  Breach of Fiduciary Duty

The Court next turns to Plaintiff's claim for breach of fiduciary duty.  Defendants argue that Plaintiff's claim fails because it arises from obligations that are expressly addressed by contract.  Dkt. #26 at 14.  Plaintiff responds that the "joint venture" nature of the relationship between the Contributing Shareholders and Defendants provide a basis for the claim, and the claim should be allowed to move forward.  Dkt. #31 at 20-23.  The Court disagrees.

Under Delaware law, "[i]t is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim.  In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous."  *Nemec*, 991 A.2d at 1129.  Here, as in *Nemec*, Plaintiff's claim essentially "seeks to enforce obligations that are expressly addressed by contract (the Stock Plan), and that, therefore, must be adjudicated within the analytical framework of a breach of contract claim."  *Id*.

ORDER – 8

Plaintiff's argument that there is somehow a joint venture between the Contributing Shareholders and Defendants is not persuasive.  It is clear that the transaction at issue here constituted an acquisition where Defendants purchased all of the equity of Vieosoft, not a joint venture where the former shareholders retained any ownership or right of control. *See* Dkt. #1 at ¶ 20 and Dkt. #1-1 at § 1.1.  Accordingly, the Court agrees that this claim must be dismissed as superfluous.

### E.  Breach of Contract

Defendants next argue that Plaintiff has failed to state any express breach of contract claim.  Specifically, Defendants argue that Plaintiff has failed to state that Defendants have breached any obligation imposed by the contract.  The Court disagrees.  Plaintiff has pled a valid breach of contract claim on its face.  Indeed, Plaintiff has alleged the breach of eight obligations under the contract.  Dkt. #31 at 10.  Whether or not the alleged breaches are in fact breaches is a factual matter not appropriate for resolution at this stage.  Further, Plaintiff's claim based on frustration will not be dismissed, the resolution of which impacts the breach of contract claim as well, and Plaintiff's breach of fiduciary duty claim is being treated as one for breach of contract as discussed above.  For these reasons, the Court will not dismiss this claim at this stage of the proceedings.

### F.  Defendants Emdeon and EBS

Finally, Defendants move to dismiss Emdeon and EBS from this action on the basis that neither was a party to the contract and therefore neither owes any contractual duties to Plaintiff.  Dkt. #26 at 22.  Plaintiff argues that it is not appropriate to dismiss these Defendants as Envoy, LLC, the entity that executed the agreement, was established solely as an acquisition vehicle and

Emdeon was the entity that paid the Contributing Shareholders and remained responsible for future payments to those Shareholders.  Dkt. #31 at 24.  Plaintiff further argues that it has sufficiently pled claims against these entities.  *Id.*  The Court agrees with Plaintiff.

In examining similar situations, Delaware courts have declined to dismiss Defendants who were not a signatory to the contract.  For example, in *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.,* 1999 Del Ch. LEXIS 207, *6-7 (Del. Ch. Nov. 2, 1999), the Court of Chancery of Delaware explained:

> under either standard Apollo would qualify [as a party Defendant], at least for purposes of this motion.  If the broader ("interested person") standard is the test, then Apollo would be a proper party, because the Complaint alleges (at P 6) that Apollo *acquired* MTI through Newco, a shell corporation newly formed by Apollo for that purpose.  Thus, the Amended Complaint may fairly be read to claim that Apollo is the true owner of MTI, and as such was the real purchaser in interest.
>
> Even if the narrower standard were applicable Apollo would be a proper defendant, because the Amended Complaint alleges facts from which an extra contractual basis for Apollo's joinder can be inferred, namely, that Newco – the nominal purchaser and Merger Agreement signatory – was the agent and/or *ego* of Apollo and acted solely on Apollo's behalf.  That is a reasonable inference from the allegations that Apollo (i) made the offer to acquire MTI and (ii) in fact acquired MTI, through a shell subsidiary (Newco) that was formed at the direction of, and was either directly or indirectly controlled by, Apollo.
>
> Accordingly, in these circumstances and at this stage, I find that Apollo is a proper party defendant.

*Id.*  The Court finds the same reasoning persuasive in the instant matter and declines to dismiss Emdeon and EBS at this time.

**E.  Leave to Amend**

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured

ORDER – 10

by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Given the basis for dismissing Plaintiff's breach of fiduciary duty claim, discussed above, the Court finds that the claim cannot be cured by further amendment.

## IV.    CONCLUSION

Having reviewed Plaintiff's Complaint and the Exhibits thereto, the parties' briefing on the instant motion, and the remainder of the record, the Court hereby finds and ORDERS:

1. Defendants' Motion to Dismiss (Dkt. #26) is GRANTED IN PART AND DENIED IN PART as set forth above.

2. Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and breach of contract shall proceed.

3. Plaintiff's claim for breach of fiduciary duty is dismissed without leave to amend.

DATED this 17th day of September 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER – 11