HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARC LILLY, NOT IN HIS INDIVIDUAL CAPACITY BUT AS THE REPRESENTATIVE FOR THE FORMER SHAREHOLDERS OF VIEOSOFT, INC., <br><br>   Plaintiff, <br> v. <br><br> CHANGE HEALTHCARE SOLUTIONS, LLC (f/k/a ENVOY, LLC); CHANGE HEALTHCARE HOLDINGS, INC. (f/k/a EMDON, INC.); CHANGE HEALTHCARE OPERATIONS, LLC (f/k/a EMDEON BUSINESS SERVICES, LLC) <br><br>   Defendants and <br>   Counterclaim Plaintiffs, <br> v. <br><br> DAVID GRANT; MARC LILLY, INDIVIDUALLY AND AS THE REPRESENTATIVE FOR THE FORMER SHAREHOLDERS OF VIEOSOFT, INC.; PETER HOOVER; AND JOHN EASTMAN, <br><br>   Counterclaim Defendants. | Case No. 2:15-cv-00742 RSM <br><br> **PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT** <br><br> **NOTE ON MOTION CALENDAR: FEBRUARY 3, 2017** <br><br> **ORAL ARGUMENT REQUESTED** |

PLAINTIFF'S MOTION FOR RELIEF
FROM JUDGMENT- 1
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

I. **INTRODUCTION AND RELIEF REQUESTED**

On December 20, 2016, the Court issued an order granting summary judgment and entered final judgment in this breach of contract case, despite the existence of at least one undisputed, on-going breach of the SPA.[1]  (Doc. 99 and 100.)  Specifically, the SPA requires Defendants to pay a termination fee to Plaintiff within 30 days of terminating the SPA.  (SPA, § 6.2.)  Although the Court noted this issue, and although Plaintiff afforded Defendants the opportunity to cure, Defendants have again refused to pay the termination fee, forcing the instant motion.  Plaintiff, representing a set of individuals subject to ongoing non-competes, should not have to prosecute an extended appeal to obtain remedy for this patent breach.

In addition to this ongoing breach, Plaintiff respectfully submits that the Court erred in concluding that Defendants were entitled to frustrate Plaintiff's opportunity to achieve the earn-out.  In reaching this conclusion, this Court relied upon limited portions of the negotiation history, without: (a) crediting Plaintiff's evidence of the parties' mutual understanding and intent; (b) construing the contract against the drafter; or (c) reading the contract in a manner that gives meaning to entire contract.  In finding that the frustration doctrine does not apply and in reading out the implied covenant, the Court misapplied case law.

To prevent manifest unjustness to Plaintiff, the requests that the Court vacate its Order and Judgment pursuant to Fed. R. Civ. Proc. 59(e) and/or 60(b).

II. **STATEMENT OF FACTS**

On December 20, 2016, the Court issued an order granting Defendants' motion for summary judgment and dismissing Plaintiff's remaining claims ("Order").  (Doc. 99.)  On that same date, the Clerk entered a Judgment In A Civil Case, based on the Order ("Judgment"), thereby ending the case.  (Doc. 100.)

---

[1]   All abbreviations and capitalized terms used herein have the same definitions as used in the Motion and Opposition to Summary Judgment (Doc. 79 and 85).

**PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT- 2**
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

The Court held that Defendants validly terminated the SPA for failure to complete the Milestone Objectives, despite Plaintiff's evidence of frustration; at the same time, the Court found that based upon Defendants' termination, Shareholders were guaranteed a $4.75 million payment. (Order 6:16-18.) Before litigation was filed, Defendants agreed this payment was due. (Order, 9:10-12.) But, the Court noted that, "To date, that payment has not been made … ."[2] (Order p. 6, n. 4.) The Court noted Plaintiff's contention that Defendants' failure to make this payment constitutes a breach of contract. (Order, 11:11; Opposition (Doc. 85) 16:16-17:8.)

Shortly after receipt of the Order, Plaintiff's counsel contacted Defendants' counsel regarding the unpaid termination fee. Plaintiff's counsel explained that, absent tender of the termination fee, Plaintiff would move to set aside the Order and Judgment based upon the extant breach. Defendants refused to make this payment, forcing this motion.[3] (Daucher Decl., Ex. A.)

The Court confirmed that Shareholders worked on Defendants' deliverables, completing some, and noted evidence that Defendants deprived Shareholders of anticipated development resources. (Order, 7:21-8:9.) The Court also noted that Defendants' business executives knew there was a "mismatch between the four guys and their payouts and the project plan we are following," and recommended revision of the Development Plan. (Order, 8:10-24.)

Plaintiff contended that the failure to modify the Development Plan in light of these facts was a breach of the implied covenant of good faith and fair dealing. (Opposition 21:8-16; 22:13-22.) But, based upon the negotiation history only, and without construing the SPA against the drafter or giving mean to the entire SPA, the Court read the implied covenant of good faith and fair dealing out of the contract, conferring on Defendants the right to frustrate Plaintiff's earn-out

---

[2] Defendants themselves characterized the termination fee as "guaranteed" (Motion (Doc. 79) 2:11-17) – as well they had to, as the SPA does not provide for any contingencies around the payment of the fee (*see* Doc. 86-11 (SPA), § 6.2(a) (Ex. 11 p. 42)).

[3] Defendants responded that they would "honor" the Minimum Payment Provision of the SPA "but subject to" its counterclaim. (Daucher Decl. ¶ 2 and Ex. A thereto.) However, the Order closes this case entirely, and final judgment has been entered.

PLAINTIFF'S MOTION FOR RELIEF
FROM JUDGMENT- 3
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

opportunity.

### III. LEGAL ARGUMENT

#### A. Legal Standard Governing Rule 59(e) and Rule 60(b) Relief

Rule 59(e) authorizes a court to vacate a judgment. *Foman v. Davis* (1962) 371 U.S. 178, 180; *Lolli v. Cnty. of Orange*, 351 F3d 410, 413-414 (9th Cir. 2003) (Rule 59(e) and 60(b) can be used to seek relief from an order granting summary judgment). A party can file a motion under Rule 59(e) on the basis of clear error of law or fact, or to prevent manifest injustice. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (finding trial court did not abuse its discretion by amending the judgment).

Similarly, Rule 60(b) authorizes a court to set aside a final order or judgment and reopen a case on a showing of mistake by the court or for any other reason that justifies relief. Fed. R. Civ. Proc. 60(b)(1) and 60(b)(6); *see also Gila River Ranch, Inc. v. United States*, 368 F.2d 354, 356-57 (9th Cir. 1966) (finding that, in a case involving mistake, the trial judge may "hold a rehearing and change his decision"). Courts may also correct misapplications of law pursuant to this rule. *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 440-41 (9th Cir. 1982) (affirming district court's reconsideration of an award of costs, originally granted based on an error of law made by the court); *Barrier v. Beaver*, 712 F.2d 231, 234-35 (6th Cir. 1983) (finding "mistake of law" includes a court's mistake as to applicable law; noting circuits in accord).

The purpose of these rules is to *avoid unnecessary appeals* by allowing the correction of errors. *Barrier*, 712 F.2d at 234-35. "No good purpose is served by requiring the parties to appeal to a higher court, often requiring remand for further trial proceedings, when the trial court is equally able to correct its decision …". *Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964) (J. Friendly).

PLAINTIFF'S MOTION FOR RELIEF
FROM JUDGMENT- 4
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

### B. The Court's Order and Judgment Should Be Vacated Given Defendants' Ongoing Breach Of Its Obligation To Pay The Termination Fee

In opposing the motion for summary judgment, Plaintiff contended that Defendants breached the SPA by failing to pay the guaranteed termination fee.  (Opposition, 16:16-17:8.)  The Court found that the termination fee was a guaranteed payment, that Defendants agreed this payment was due, and that Defendants had not made this payment.  (Order, 6:16-18 and n. 4.)

Upon receipt of the Order and Judgment, Plaintiff promptly gave Defendants a further opportunity to cure this breach; but, while Defendants acknowledged the duty to make the payment, Defendants again refused to pay the termination fee.  (Daucher Decl., Ex. A.)   As a result, Defendants' breach is manifest and ongoing.

Defendants essentially declined to provide support for this Court's Order and Judgment, instead pursuing the ongoing approach of starving-out a group of individual former shareholders, already subject to non-competes.  The Court should not countenance this conduct.

The Court identified Defendants' non-payment of the termination fee as one of the breaches of the SPA and noted the non-payment.  (Order 11:11, fn. 4.)  But, in its subsequent analysis of Plaintiff's contract claim, the Court did not discuss this termination fee, instead focusing on whether Defendants could frustrate Plaintiff's opportunity to achieve the earn-out.

Even assuming Defendants had discretion to frustrate the Shareholders' opportunity, the SPA does not grant Defendants *any* discretion regarding payment of the termination fee:

> "[I]n the event this Agreement is terminated by Emdeon […] then Emdeon *shall promptly, but in no event more than thirty (30) days following the Termination Date, pay* to the Shareholders' Representative for further distribution to the Shareholders an amount to be determined as follows (such payment, a "Minimum Payment") …".

(Doc. 86-11, p. 42 (emphasis added).)  Defendants have no excuse for failing to timely pay, and continuing to refuse to pay, the termination fee.

PLAINTIFF'S MOTION FOR RELIEF
FROM JUDGMENT- 5
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

By granting summary judgment on Plaintiff's breach of contract claim without resolving the termination fee breach, the Court made a plain error or mistake under Rule 59(e) and/or Rule 60(b). And, Defendants have refused to cure this breach.

Failure to correct this error (by setting aside the Order and Judgment) will work manifest injustice on Plaintiff. Plaintiff, representing a set of individuals subject to ongoing non-competes (in spite of the SPA's termination), will be forced upon a lengthy appellate journey without even the minimum promised benefit of the SPA. For these reasons, Plaintiff respectfully requests that the Court vacate its Order and Judgment.

**C.     The Court's Order and Judgment Should Also Be Vacated Because the Court Relied On Improper Evidence Of Intent To Read Out The Implied Covenant At The Summary Judgment Phase**

The preliminary question whether an ambiguity exists in a contract is a question of law for the court's determination. *United States v. Sacramento Municipal Utility Dist.*, 652 F.2d 1341, 1343-44 (9th Cir. 1981) (reversing summary judgment where contract was ambiguous). In its decision, the Court initially stated that the SPA was unambiguous. (Order, 13:13.) This is not consistent with the Court's prior ruling on the motion to dismiss that this clause would have to be interpreted against evidence of the parties' intentions. (Doc. 40, 8:2-6.)

The Court then proceeded to interpret SPA § 1.6 as if it were ambiguous, but considered *only* Defendants' evidence concerning the negotiation history of the SPA in doing so. (Order 13:19-14:6.) In its Order, the Court did not construe the SPA against Defendants as drafters, nor did the Court read the contract in a manner that gives any substantive meaning to Defendants' affirmative obligations under the SPA and Development Plan (such as delivery of Core components and administration of the Development Plan). The Court concluded that Defendants were permitted to frustrate the Shareholders' opportunity, holding that "the prevention doctrine has no application in this case." (Order 14:7-10; 16:14-17.)

PLAINTIFF'S MOTION FOR RELIEF
FROM JUDGMENT- 6
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

In effect, the Court held that Defendants had no obligations to Plaintiff under the SPA or joint Development Plan. Giving such unfettered discretion to the drafter of an ambiguous agreement is not consistent with Delaware law on contract interpretation, and is inconsistent with the implied covenant's purpose of ensuring that parties "act with good faith towards the other with respect to the subject matter of the contract." *Katz v. Oak Industries, Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986).

When a contract is unclear, "summary judgment is improper as differing views of the intent of parties will raise genuine issues of material fact." *Sacramento Municipal Utility Dist.*, 653 F.2d at 1344. In such a case, "[t]he inferences to be drawn from the underlying facts must be reviewed in the light most favorable to the party opposing the motion." *Id.* at 1343.

> "When a contract is ambiguous, and parties present conflicting evidence regarding their intent at the time of the agreement, a genuine issue of material fact exists which cannot be determined summarily by the court. […] But so long as sufficient evidence could lead a rational trier of fact to resolve the dispute in favor of either party, granting either party's dueling motions for summary judgment would be inappropriate. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)."

*SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1215 (10th Cir. 2009) (reversing summary judgment where non-moving party presented sufficient evidence to create a triable issue); *accord*, *B. F. Goodrich Co. v. A.T.I. Caribe, Inc.*, 366 F.Supp. 464, 469-70 (D. Del. 1973) (denying summary judgment where contract was ambiguous, finding genuine issue as to meaning of contract provisions).

Within each negotiating camp, there were two sets of parties negotiating the SPA – the attorneys and the business executives. (Opposition, 8:18-21.) Plaintiff presented extensive evidence of Defendants' *executives' expectations and understandings* of the SPA during negotiations and performance of the contract, facts that support Plaintiff's position that Defendants had affirmative obligations under the SPA, including the duty to manage the SPA

PLAINTIFF'S MOTION FOR RELIEF
FROM JUDGMENT- 7
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

and Development Plan fairly.  (*Id.*, 8:21-9:11.)  The Court should have considered and credited this evidence, finding a triable issue of fact as to the nature of Defendants' duties to administer the Development Plan.  *SCO Group, supra*, 578 F.3d at 1215.  Instead, the Court ignored Plaintiff's evidence of the business executives' expectations and understandings.  (Order, 13:19-14:10.)  This was error.  *Sacramento Municipal Utility Dist.*, 653 F.2d at 1343.

Specifically regarding the frustration doctrine, the Court concluded that Defendants were permitted to frustrate the Shareholders' earn-out opportunity.  The Court relied on *A.I.C. Ltd. v. Mapco Petroleum*, 711 F.Supp. 1230, 1238-39 (D. Del. 1989), in reaching this conclusion.  However, in *Mapco*, the agreement expressly gave defendant the right not to enter into certain contracts, the execution of which was a condition precedent to plaintiff's right to receive payment.  *Id.* at 1233-34.  Accordingly, the court found the frustration doctrine did not apply because plaintiff had "*assume[d] the risk* that fulfillment of the condition precedent will be prevented."  *Id.* at 1238 (emphasis original).

Unlike in *Mapco*, section 1.6 does not expressly reserve to Defendants the authority to refuse to administer the Development Plan fairly.  Section 1.6 does not allow Defendants' to administer the SPA in their "sole discretion," and does not expressly allow them to prevent Plaintiff's reasonable opportunity to achieve the earn-out.  The SPA says that Defendants will "administer the Development Plan."  While the subsequent sentence confirms Defendants' general authority to run their overall business, it goes too far to read the clause as conferring authority to administer the Development Plan in Defendants' "sole and absolute discretion," even to the extent of frustrating Shareholders' opportunity thereunder.  This authority clause should have been read in a way that renders the rest of the contract meaningful.

The Court relies exclusively upon rejected changes to the contract, unadorned by comment from the lawyers, without considering express testimony by the involved Emdeon executives as to their understanding of Defendants' obligations under the SPA.

FROM JUDGMENT- 8
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

Where Courts have excluded the implied covenant, as in *Mapco*, they do so only when confronted with *express rights* plainly found in the operative agreement, in other words only when *forced* to do so by clear and express language. *See, e.g., Mapco, supra*, 711 F.Supp. at 1233-34; *Nemec v. Shrader*, 991 A.2d 1120, 1126-27 (Del. 2010) (affirming motion to dismiss implied covenant claim when the conduct at issue – the timing of stock redemption rights – was expressly governed by the agreement); *Lazard Tech. Partners, LLC. v. Qinetiq N. Am. Operations*, 114 A.3d 193, 196 (Del. 2015) (finding seller could not rely on the implied covenant to avoid the burden of showing the buyer acted with intent in violating earn-out clause, when earn-out clause specifically required intent to find breach).

In fact, courts have considered a variety of clauses as insufficient to read out the implied covenant. *See O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1195-97 (10th Cir. 2004) (affirming denial of JMOL; despite defendant's contentions that its actions were permitted by the express terms of the agreement, court found that even the broadest of the relied upon clauses did not expressly permit the conduct at issue); *MWI Veterinary Supply Co. v. Wotton*, 2012 WL 2576205 *7 (D. Id. July 3, 2012) (denying motion to dismiss; although contract gave MWI the right to change its business, Wotton adequately pleaded a breach of the implied covenant by alleging that MWI failed to support its business division, impairing Wotton's opportunity to receive earn-out payments).

The "implied covenant is a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain." *Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 920 (Del. Ch. 1999) (holding covenant breached; party could not interpret counsel selection clause so broadly as to unreasonably restrict or manipulate the other into hiring inferior counsel). Plaintiff was entitled to *fair* administration of the SPA and Development Plan by Defendants. Plaintiff was entitled, not to a guarantee, but to a *reasonable*

PLAINTIFF'S MOTION FOR RELIEF
FROM JUDGMENT- 9
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

*opportunity* to complete the Milestone Objectives and thereby receive payment under the SPA. (Opposition, 18:19-21; 21:23-22:11.)

Here, however, the Court interpreted the SPA as granting absolute authority to Defendants, rendering meaningless the other obligations imposed on Defendants under the SPA – no meaning is given to the duty to administer, no meaning is given to Defendants' obligation to deliver Core components, and no consideration is given to the burden implicit in non-competes that survive termination. While section 1.6 could be read as permitting general business decisions at Emdeon, including decisions that affect the timing of development, such changes must then be accompanied by *reasonable administration* of the SPA and Development Plan.

In opposing summary judgment, Plaintiff presented substantial evidence of Defendants' business executives' intent and understanding of the SPA, including their understanding that Defendants had affirmative obligations under the SPA, that the Development Plan was a complex venture that would evolve and require modification over time, and that the key executives actually involved in the project recommended revision to the Development Plan in light of changes outside of the Shareholders' control. The Court did not credit this evidence.

For these reasons, Plaintiff respectfully requests that the Court vacate its Order and Judgment pursuant to Rule 59(e) and/or Rule 60(b).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court vacate its order and judgment granting Defendants' Motion for Summary Judgment and closing the case (Doc. 99 and 100), as permitted under Rule 59(e) and/or Rule 60(b).

PLAINTIFF'S MOTION FOR RELIEF
FROM JUDGMENT- 10
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

RESPECTFULLY SUBMITTED this 13th day of January, 2017.

        HOLMES WEDDLE & BARCOTT, P.C.

        By:  *s/ Lafcadio Darling*
        John E. Casperson, WSBA No. 14292
        Lafcadio Darling WSAB No. 29963
        999 Third Avenue, Suite 2600
        Seattle, WA  98104
        Telephone: 206-292-8008
        Facsimile: 206-340-0289
        Email: casperson@hwb-law.com

        By:   s/ Brian Daucher
        Brian M. Daucher, (CA Bar No. 174212)
        Abby Meyer (CA Bar No. 294947)
        Daniel Bane (CA Bar No. 251144)
        SHEPPARD MULLIN RICHTER & HAMPTON
        (Admitted *pro hoc vice*)
        650 Town Center Drive
        Fourth Floor
        Costa Mesa, CA  92626
        Telephone: 714-424-2843
        Facsimile: 714-513-5130
        Email: bdaucher@sheppardmullin.com;
              ameyer@sheppardmullin.com;
              dbane@sheppardmullin.com
        *Attorneys for Plaintiff and Counter-Claim Defendants*

PLAINTIFF'S MOTION FOR RELIEF
FROM JUDGMENT- 11
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January 2017, I electronically filed the above document with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Steven W. Fogg
Corr Cronin Michelson Baumgardner Fogg & Moore. LLP
1001 Fourth Ave, Suite 3900
Seattle, WA 98154-1051
Email: sfogg@corrcronin.com

Overton Thompson III
Bass Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 97201
Email: OThompson@bassberry.com

Shayne R. Clinton, Esq.
1700 Riverview Tower
900 S. Gay St.
Knoxville, TN 37902
sclinton@bassberry.com

_____
Starla Trotter, Legal Assistant

PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT- 12
2:15-cv-00742 RSM