HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARC LILLY, NOT IN HIS INDIVIDUAL CAPACITY BUT AS THE REPRESENTATIVE FOR THE FORMER SHAREHOLDERS OF VIEOSOFT, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHANGE HEALTHCARE SOLUTIONS, LLC (f/k/a ENVOY, LLC); CHANGE HEALTHCARE HOLDINGS, INC. (f/k/a EMDON, INC.); CHANGE HEALTHCARE OPERATIONS, LLC (f/k/a EMDEON BUSINESS SERVICES, LLC) <br><br> Defendants and Counterclaim Plaintiffs, <br><br> v. <br><br> DAVID GRANT; MARC LILLY, INDIVIDUALLY AND AS THE REPRESENTATIVE FOR THE FORMER SHAREHOLDERS OF VIEOSOFT, INC.; PETER HOOVER; AND JOHN EASTMAN, <br><br> Counterclaim Defendants. | Case No. 2:15-cv-00742 RSM <br><br> **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT** <br><br> **NOTE ON MOTION CALENDAR: FEBRUARY 3, 2017** <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR RELIEF FROM JUDGMENT**
2:15-cv-00742 RSM

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

## I. REPLY

### A. Rule 59(e) and Rule 60(b) Relief Is Appropriate

This is an extraordinary case where relief from judgment is appropriate and necessary.

Following Shareholders' failure to meet the Milestone Objectives (excused in Plaintiff's view), Defendants *elected* to terminate the SPA under section 6.1(b). In making this election, Defendants acknowledged their duty to pay the termination fee within 30 days. (Doc. 86-11, SPA, § 6.2(a)(i) (termination fee to be paid "in no event" later than 30 days after termination).) But, seeing individuals held out of the market by ongoing non-competes, Defendants made a cynical decision to take the *benefit* of the termination without the *burden* of making the payment.

On summary judgment, this Court noted the claim for breach for nonpayment of the termination fee and noted the lack of payment, but did not address it further. Defendants suggest the Court condoned the non-payment; but, the Order does not go this far. Following the Order, Plaintiff promptly afforded Defendants the opportunity to cure this breach. Defendants refused, asserting a $16 million setoff from their counterclaim (even though the counterclaims are now effectively dismissed). And, inconsistently, Defendants now claim that they need not make this payment until a "final judgment" is in place. Case law does not support this position. Having elected the benefits of a section 6.1(b) termination, Defendants must also take the corresponding burdens. Given that the breach is ongoing, to avoid manifest injustice, this Court should set aside the Order and Judgment.

Relief from judgment is also appropriate because the Court credited and interpreted the evidence of negotiation history in a light most favorable to Defendants – *the moving party*. *Compare United States v. Sacramento Municipal Utility Dist.*, 652 F.2d 1341, 1343-44 (9th Cir. 1981). If this case must proceed, the Court should fully consider the evidence as to the meaning of this clause, in light of all applicable interpretation principles and evidence through trial.

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR RELIEF FROM JUDGMENT**
2:15-cv-00742 RSM - 1

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

### B. The Termination Fee Is Due and Owing - *Now*

Defendants hope that by starving out a group of individuals subject to non-competes, they will force Shareholders to abandon their claims. These older individuals (50s and 60s), with over 100 years of healthcare industry experience, are subject to non-competes, precluding them from working in their chosen industry. The termination fee was meant, in part, to compensate these individuals immediately for the non-competes. The fee is made payable without condition or excuse, but is being withheld on specious and cynical grounds.

Defendants assert for the first time (not mentioned during summary judgment briefing) that Plaintiff's failure to specifically allege non-payment of the termination fee in the Complaint precludes Plaintiff from asserting the non-payment as a breach in opposing summary judgment.[1] This argument cannot be taken seriously.

As an initial matter, the fact of nonpayment was not alleged as breach in the Complaint because at the time the Complaint was filed, Defendants had *promised to pay* the termination fee. (Doc. 86-12.) Defendants, without valid excuse, reneged on their obligation *after* the Complaint was filed. (*Id.*) Plaintiff was not obligated to amend the complaint to address this known issue. Additional related issues often arise in the course of civil litigation. The Federal Rules contemplate this, providing that motions to conform the pleadings to the evidence can be filed *even after judgment*. Fed. R. Civ. Proc. 15(b).

The relevant question is whether Defendants had fair notice of this breach. *Franco v. U.S. Forest Service*, 2016 WL 1267639 *1-3 (Mar. 31, 2016, E.D. Cal.) (finding claims can be considered in opposing summary judgment when there is "fair notice" of the claim "and the grounds upon which it rests"; in this case, the court allowed and disallowed certain claims).

---

[1] Defendants suggest that Plaintiff should bring a subsequent suit to pursue the termination fee; however, a subsequent suit based on the same contract would likely be precluded under Fed. R. Civ. P. 13(a) and/or the claim preclusion doctrine. *See, e.g., Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269-70 (11th Cir. 2002).

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT**
2:15-cv-00742 RSM - 2

HOLMES WEDDLE & BARCOTT, A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

Defendants cannot claim lack of notice of the breach related to the termination fee:

(a) Defendants themselves promised to pay the termination fee and reneged on that promise after the Complaint was filed; (b) Defendants *acknowledge* in their Counterclaim that the termination fee is due and owing, but assert that payment is excused by Shareholders' breaches, putting the fee at issue themselves (Doc. 47, ¶ 49 ("breach of the [SPA] that excuses any subsequent obligation of Emdeon to pay Plaintiff the … $4,650,000.00 *as would have otherwise been required upon the termination of the [SPA]*", ¶¶ 58, 62) (emphasis added); and (c) Defendants admit in their motion for summary judgment that because they terminated the SPA, "Plaintiff also became entitled to an additional $4.65 Million, despite the shareholders' failure to complete the milestones." (Doc. 79, 22:22-24.) Notably, Defendants' reply on summary judgment failed to complain that the breach for non-payment was not alleged in the Complaint. (Doc. 97.)

Other courts facing this issue have found sufficient notice to allow claims to proceed. *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (finding opposing party had "fair notice" of a claim that was discussed in filings subsequent to the complaint; "Notice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action").

The Complaint does not purport to exhaustively list Defendants' breaches. (Doc. 1, ¶ 76 (Defendants breached "by, among other things") and Prayer 30:10, 25 (seeking all damages according to proof and such other relief as deemed proper).) In the Initial Disclosures, Plaintiff identified documents relating to the Minimum Payment as a category of relevant documents. Such documents would only be relevant to a breach claim.

In the Counterclaim, Defendants argued *only* that non-payment of the termination fee was excused because, essentially, Shareholders breached first. (Doc. 47, ¶¶ 49, 58, 62.) For the first time, Defendants now argue that payment can be delayed based on an indemnification provision in the SPA. Unsurprisingly, Defendants do not quote the entire provision, because reading it as a whole makes clear that it is inapplicable:

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR RELIEF FROM JUDGMENT
2:15-cv-00742 RSM - 3

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

> "Emdeon may set-off any amount in respect of which *it is agreed by Emdeon and the Shareholders' Representative in writing*, or otherwise finally determined pursuant to the terms of this Agreement, that any Emdeon Indemnified Person is entitled under this Article VIII (disregarding any Founder Individual Cap or any Non-Founder Shareholder Individual Cap for purposes of this Section 8.8) against any payment to any Person otherwise payable by Emdeon … ."

(Doc 86-11, § 8.8 (emphasis added).) There is no evidence that Plaintiff agreed to non-payment of the termination fee. Moreover, an "Emdeon Indemnified Person" is defined as someone who could be subject to loss or liability as a result of certain *third-party* claims. (Doc 86-11, § 8.2.) No such third party claim has been identified. The SPA's indemnification and set-off provisions simply do not apply in this case.

When faced with non-completion of the Milestone Objectives, the SPA provided Defendants with several options. Defendants could continue to work toward completion with Shareholders; or, terminate the SPA under any of five different provisions. (Doc. 86-11, §§ 1.5(c)(ii) and 6.1(a)-(e).) Defendants chose to terminate pursuant to section 6.1(b). Upon this election, the SPA requires, in no uncertain terms, that Defendants "*shall promptly*, but *in no event more* than thirty (30) days following the Termination Date, *pay*" the termination fee. (*Id.* at § 6.2(a) (emphasis added).) This language, drafted by Defendants, is directly on point and affords them no discretion.

Even assuming the alleged prior breach by Shareholders gave rise to the termination right, it does not also excuse Defendants' required performance under its elected remedy. *Northpointe Holdings, LLC v. Nationwide Emerging Managers, LLC*, 2014 Del. Super. LEXIS 363 *53-54 (Del. Super. Ct. July 16, 2014) (finding that when Nationwide terminated the agreement consistent with terms requiring payment of a termination fee, "Nationwide's failure to pay the termination fees due and owing, was a breach of contract.") (on remand following appeal, obligation to pay termination fees was confirmed, *Northpointe Holdings, LLC v. Nationwide Emerging Managers, LLC*, 2015 Del. Super. LEXIS 409 (Del. Super. Ct. Aug. 17,

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR RELIEF FROM JUDGMENT
2:15-cv-00742 RSM - 4

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

2015); *see also Centrix HR, LLC v. On-Site Staff Mgmt.*, 349 Fed. Appx. 769, 775-76 (3d. Cir. 2009) (affirming binding nature of non-competes after breach of contract; "The Magistrate Judge's finding that HR breached the Agreement did not give Defendants license to declare the entire Agreement void and discharge their own continuing obligation under the non-compete clause."); *Henkel Corp. v. Innovative Brands Holdings, LLC*, 2013 WL 396245 *7 (Jan. 31, 2013 Del. Ch.) ("The nonbreaching party may not, on the one hand, preserve or accept the benefits of a contract, while on the other hand assert that contract is void and unenforceable.").

Manifest injustice will result if the Order and Judgment are left undisturbed, as Shareholders, a group of individuals held out of the market they know, continue to be deprived of both the minimum consideration they were long ago entitled to under the SPA and the right to compete. Defendants, preferring the cynical leverage achieved by refusing to tender the termination fee, have declined to act consistently with this Court's Order and Judgment by tendering payment. For these reasons, the Order and Judgment should be set aside.

### C. The Court Found The SPA Is Ambiguous

In assessing the breach of contract claim, the Court initially found that the SPA was not ambiguous, but then alternatively considered the ambiguity. (Order 13:19-21.) In analyzing the ambiguity, the Court failed to reference any of Plaintiff's evidence, instead relying solely on Defendants' evidence to discern the intent of the agreement. (*Id.* at 13:22-14:10.)

In its analysis of the implied covenant, the Court similarly relied on Defendants' negotiation history evidence *alone* to find that the implied covenant does not apply. (Order, 18:9-20 ("Defendants bargained for the freedom … they specifically rejected proposed provisions …" and "Likewise […] Defendants did not frustrate the Shareholders from completing their contractual obligations for the reasons discussed above.") As noted in the moving papers, the implied covenant will only be read away in the face of an unambiguous,

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR RELIEF FROM JUDGMENT
2:15-cv-00742 RSM - 5

HOLMES WEDDLE & BARCOTT, A
PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

express, and contrary provision. Even Defendants continue to rely upon the negotiation history evidence to support the Court's finding. (Opp., 12:17-22.)

Fundamentally, this Court has construed a complicated joint development contract running more than 170 pages to mean just the following: Defendants agree to pay Shareholders $3 million upfront, a minimum of $4.75 million more, and more money only if Defendants so choose. By construing one general sentence in section 1.6 as giving Defendants absolute authority to frustrate Plaintiff's opportunity under the SPA,[2] the Court has not construed the SPA against the drafter, has not given meaning to other language, and has not acknowledged any Shareholder rights other than to two minimum payments (one of which remains unpaid).

In its response brief, Defendants again note Plaintiff's testimony that he *personally* is unaware of evidence of bad faith. Plaintiff is not an attorney, nor was he a witness to the deliberations by which Defendants' executives considered, first supported, and ultimately rejected modifications to the Development Plan. The law defines bad faith in the implied covenant context to mean "evasion of the spirit of the bargain, lack of diligence and slacking off … and interference with or failure to cooperate in the other party's performance." *O'Tool v. Genmar Holdings, Inc.,* 387 F.3d 1188, 1203 (10th Cir. 2004) (applying Delaware law). Defendants did not provide Plaintiff with this definition of bad faith before framing questions to him. (Doc. 80-2.) In opposing summary judgment, Plaintiff identified significant evidence of such bad faith -- evidence that stands with or without Plaintiff's personal knowledge of such facts. For this further reason, it was plain error to reject the frustration defense.

## II. CONCLUSION

Plaintiff respectfully requests that the Court vacate its summary judgment order and judgment closing the case (Doc. 99 and 100), as permitted under Rule 59(e) and/or Rule 60(b).

---

[2] Plaintiff reiterates that it sought no guarantee of completion of the Milestone Objectives, but rather a reasonable opportunity to achieve them.

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT**
2:15-cv-00742 RSM - 6

HOLMES WEDDLE & BARCOTT, A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

RESPECTFULLY SUBMITTED this 3rd day of February, 2017.

HOLMES WEDDLE & BARCOTT, P.C.

By: /s/Lafcadio H. Darling
Lafcadio Darling WSBA No. 29963
John E. Casperson, WSBA No. 14292
999 Third Avenue, Suite 2600
Seattle, WA 98104
Telephone: 206-292-8008
Facsimile: 206-340-0289
Email: ldarling@hwb-law.com
Email: jcasperson@hwb-law.com

Brian M. Daucher, (CA Bar No. 174212)
Abby H. Meyer (CA Bar No. 294947)
SHEPPARD MULLIN RICHTER & HAMPTON
(Admitted *pro hac vice*)
650 Town Center Drive, Fourth Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130
Email: bdaucher@sheppardmullin.com
ameyer@sheppardmullin.com
*Attorneys for Plaintiff and Counter-Claim Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of February 2017, I electronically filed the above document with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Steven W. Fogg
Corr Cronin Michelson Baumgardner Fogg & Moore. LLP
1001 Fourth Ave, Suite 3900
Seattle, WA 98154-1051
Email: sfogg@corrcronin.com

Bass Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 97201
Email: OThompson@bassberry.com

Shayne R. Clinton, Esq.
1700 Riverview Tower
900 S. Gay St.
Knoxville, TN 37902
sclinton@bassberry.com

*/s/ Starla Trotter*

Starla Trotter, Legal Assistant

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT**
2:15-cv-00742 RSM - 7